## 57379. GRANT v. BELL et al.

QUILLIAN, Presiding Judge.

The instant action, seeking an accounting, was brought by First National Bank & Trust Company as guardian for Elizabeth R. Napier. By amendment the action was converted into a suit for money had and received. Subsequent to the filing of the suit, Miss Napier died and James M. Grant as administrator of her estate was substituted as a plaintiff. Named as defendants in the suit were Frank W. Bell, individually and as executor under the last will and testament of Mrs. Margarette Crawford Napier, Mrs. Margarette Bell Cooper, Dr. Miller Stephens Bell, II, and Mrs. Mildred Napier Beauregard. Upon the death of Mrs. Mildred Napier Beauregard the First National Bank & Trust Company, as her executor, was substituted as a party.

The case came on for trial at which a verdict was directed in favor of the defendants. Appeal was taken by the plaintiff and we consider the following pertinent facts. Margarette Crawford Napier had three daughters — the plaintiff, Miss Elizabeth R. Napier, the defendant, Mrs. Mildred Napier Beauregard and Mrs. Margarette Napier Bell. The defendant Frank W. Bell was the husband of Margarette Napier Bell. The defendants Margarette Bell Cooper and Dr. Miller Stephens Bell are the children of Frank Bell and Margarette Napier Bell. Margarette Crawford Napier died in 1954, and left, by will, Black Lake Plantation to her three daughters, as tenants in common, for and during their natural lives. Item 6 of the will contained the following provisions: "All of my land, including all permanent improvements thereon, now known generally as Black Lake Plantation, it comprising an area of approximately eight thousand five hundred acres lying in one tract or body, on and along the westerly side of the Oconee River and on and along both sides of the paved Milledgeville-Toomsboro public road, in the Fourth and Fifth Land Districts and in the present 328th Militia District in Wilkinson County, Georgia, I give, will, devise and bequeath as follows: Unto my three daughters, Miss Elizabeth Reed Napier, Mrs. Mildred Napier Beauregard, and Mrs. Margarette Napier Bell, as tenants in common,

for and during the term of their respective natural lives only, and at the time of the death of the last surviving in life as among and between my said three daughters, in fee simple, forever, unto the children at the time of said last death then in life and/or the lineal descendants of any deceased child or children of Mrs. Margarette Napier Bell, the lineal descendants of her children deceased, if any, to take per stirpes. I intend hereby to create a life estate in said land so long, and only so long, as any one of my said three daughters shall be in life; and I further intend (two of my said daughters being childless), that should Mrs. Margarette Napier Bell not be the last surviving as between said three named daughters, her children in life at her death and/or the lineal descendants of her children deceased, if any, shall take and have such life interest and estate in said land as she shall have at the time of her death. This explanation and definition of the estates for life hereunder shall not be construed to lessen or limit in any manner or way the remainder in fee which is above provided.

"Recognizing that my said plantation is a large tract and that it may be put to varying uses and that changes in circumstances may occur during the lives of my said daughters, I expressly empower the life tenants who at the time shall hold as such under this item of this will, in the exercise of their sound discretion, to make, execute and deliver contracts, leases and/or deeds affecting all or any part or parts of said land, and thereby to sell or lease all or parts thereof or timber thereon or rights therein, provided that such action shall be unanimously agreed to by such life tenants, and provided further that such instrument or instruments employed to evidence such action shall be executed by all of such life tenants. Separate sales or leases hereunder of undivided rights or interests by life tenants is expressly prohibited. Any purchaser from said life tenants receiving an instrument in writing executed by all life tenants as above provided shall take such title and/or interest in the property and/or right conveyed as such instrument shall describe and purport to convey, freed from the life and remainder estates by this item created, and such purchasers shall not be required to see to the application of any such

purchase-money by them paid. All proceeds derived from any sale or transaction made under this provision of this will shall be and become the property of the life tenants making such unanimous sale or transaction, and the same shall be divided between them in the proportion that their life estate interest shall bear to the consideration received.

"I counsel my said daughters against the use of the power provided in the foregoing paragraph, but I donate and give such power in order that they may have a practical means of transacting their business if the occasion therefor should arise."

Beginning in 1960 and continuing through 1974, when Margarette Napier Bell died, the three daughters sold timber from Black Lake Plantation. The profits from the sale were included in their income tax returns and some of the proceeds were applied to the operation of the farm. However, apparently the sisters did not receive the bulk of the proceeds but they were placed in a "reserve" fund by Frank Bell. The proceeds were used to purchase bonds which at, the time of the trial of the case were valued at approximately $250,000. The plaintiff sought to recover one-third of that amount as her rightful share.

In each of their original answers to the complaint defendants set out a fourth defense which as evidenced by that of the defendant Frank Bell reads as follows: "This Defendant further shows that Plaintiff is not due any of the relief sought in her complaint in that she, prior to her being declared incompetent, and Mrs. Margarette Napier Bell, deceased, during her lifetime, and the Defendant Mrs. Mildred Napier Beauregard agreed between themselves to sell timber on 'Black Lake Plantation' toward the end that moneys might be raised to sustain the farm operations on said plantation with the express agreement that any money realized from the sale of said timber in excess of that needed to sustain said farming operations and the payment of taxes, and certain improvements to the premises, would be placed in a fund for the ultimate benefit of Defendants Dr. Miller Stephens Bell, II, and Mrs. Margarette Bell Cooper, they to receive the full corpus at the time of the death of the last surviving

daughter of Mrs. Margarette Crawford Napier, and it was further agreed between the persons above referred to that the corpus of the proceeds received from the selling of said trees would stand in lieu of the said timber as a part of the real estate. Said parties also agreed that such sales, fund management, and matters involving farm operation, would be handled by and through their agent and manager, Defendant Bell, individually."

In the complaint the plaintiff had alleged "On various dates prior to November 26, 1974 (when Mrs. Margarette Napier Bell died, as stated above), the three life tenants of Black Lake Plantation unanimously agreed to and did sell timber and/or other interests in land forming a part of Black Lake Plantation, in accordance with the authority conferred upon them by the provisions of Item 6 quoted in the preceding paragraph. The proceeds derived from the transactions were received by and are now being held by the defendant Bell and have been invested and reinvested from time to time by him. The proceeds have a value of a minimum of approximately $250,000.00 as of this date."

Originally in their answers the defendants basically admitted the allegations of paragraph 7; however, by amendment the following answer to paragraph 7 was proffered: "Defendant denies the allegations contained in paragraph 7 of plaintiff's complaint, except to say that by oral agreement between the said three daughters, trees growing on said land were severed and sold and the moneys realized therefrom were expended in part and allocated in part as agreed and acquiesced in by them, prior to November 1974. Defendant specifically denies that such sales were in accordance with the authority conferred upon them by the provisions of Item 6 of the Last Will and Testament of Mrs. Margarette Crawford Napier." *Held:*

1. Article VI, Sec. II, Par. IV, of the Georgia Constitution provides that the Georgia Supreme Court has jurisdiction "in all cases which involve the validity of, or the construction of wills." The Georgia Supreme Court has held that this language means that construction of a will must be directly involved and does not include construction which is merely incidental to another

proceeding. *Reece v. McCrary,* 179 Ga. 812, 816 (177 SE 741) and *Trust Co. of Ga. v. Smith,* 182 Ga. 360, 361 (185 SE 525).

The instant case certainly involves the construction of the provisions of a will. However, this court and not the Supreme Court has jurisdiction because of the Supreme Court's interpretation of the provisions of the Constitution.

2. At the beginning of the trial the plaintiff sought to introduce the deposition taken of the defendant Frank Bell. The trial court refused to permit it. Under the provisions of the Civil Practice Act § 32 (a)(2) (Code Ann., § 81A-132 (a)(2) (CPA; Ga. L. 1966, pp. 609, 644; 1972, pp. 510, 521) (if we omit the superfluous language contained therein) "the deposition of a party . . . may be used by an adverse party for any purpose." Under the plain and explicit language contained therein and, we might add, predicated on the federal authority construing this section which is taken from identical language used in the Federal Rules of Civil Procedure, the deposition was admissible.

Nevertheless, in determining whether error was committed by the trial judge in refusing to permit the introduction of the deposition we must consider the well established rule with regard to the introduction of evidence. That is, there is no legal ground to complain of the failure to admit certain evidence or testimony where it is not shown what the evidence or testimony would have been. *Mulcay v. Mulcay,* 223 Ga. 309 (2) (154 SE2d 607).

The plaintiff made no effort to show what evidence would have been contained in the deposition and we are unable to determine from the record whether its exclusion was harmful to the plaintiff or not. In the absence of harm, the exclusion of the deposition is not error. *Mullis v. Chaika,* 118 Ga. App. 11, 20 (7) (162 SE2d 448).

3. The plaintiff sought to show that the money from the sale of timber over a period of fourteen years had been used to purchase bonds. The trial judge originally limited the evidence in this regard to the four years immediately preceding the filing of the action. In a situation of this sort, the statute of limitation would not run until a demand had been made or until a demand for the money

should have been made. *Whitworth v. Oliver,* 45 Ga. App. 671 (1) (165 SE 767) and *Mayor &c. of Savannah v. Kassell,* 115 Ga. 310, 312 (41 SE 572). In this case the defendants would have had to establish at what point the defendant Bell began to hold the money adversely to the interest of the plaintiff or to show that a demand was made which was refused in order for the statute of limitation to begin to run. Here there was no evidence in such regard except as to the filing of the suit against the defendants. Thus, on the present record, the statute would have no application as to the funds or cause any cutoff four years prior to demand or bringing the suit as the trial judge apparently thought.

However, the trial judge subsequently admitted the evidence although only for a limited purpose. Since the evidence was admitted and the ruling complained of was modified by the subsequent ruling to which no objection was made we find no reversible error in this ground of the plaintiff.

4. We now reach the construction of Item 6 of the will. The defendants contend that under its terms the three sisters, as life tenants, had to unanimously agree to the sale of the timber and had to unanimously execute a written instrument evidencing such sale. The plaintiff contends that unanimous agreement was required but that only in the event that a written instrument was a requisite to consummate a sale was it necessary for the three sisters to execute such instrument. It is urged on the plaintiff's behalf that since a sale of timber need not be in writing under *Pope v. Barnett,* 50 Ga. App. 199 (6) (177 SE 358) there was no necessity to introduce evidence showing that the three sisters executed a written instrument selling such timber.

We point out that from the evidence introduced prior to the direction of the verdict there was sufficient proof offered to show that the sisters had unanimously agreed to sell the timber. Their course of dealing for fourteen years, the fact that the profits or income therefrom were reported on their federal income tax returns, the actions of the defendant Frank Bell, and the admissions contained in the answers, notably the fourth defense in each of the defendant's answers, all combine to constitute sufficient

proof of unanimous consent on the part of the three sisters to raise an issue for the jury's consideration.

We are therefore left with the crucial issue of whether under the terms of the will the plaintiff had to introduce evidence showing that the sisters executed written agreements regarding the sale of the timber. There was no evidence offered in this regard. The critical language may be found in the following passage of the will: "I expressly empower the life tenants who at the time shall hold as such under this item of this will, in the exercise of their sound discretion, to make, execute and deliver contracts, leases and/or deeds affecting all or any part or parts of said land, and thereby to sell or lease all or parts thereof or timber thereon or rights therein, provided that such action shall be unanimously agreed to by such life tenants, and provided further that such instrument or instruments employed to evidence such action shall be executed by all of such life tenants."

In our consideration the primary objective is to ascertain the testator's intention. Code §§ 113-806 and 113-807. Certainly the actions of the one who prepared the instrument regarding the will's provisions are at least indicative of that intention. The defendant Frank Bell drafted the instrument we are called upon to interpret. He is also the father of two remaindermen. If the sisters' actions over the 14 years in selling the timber had been contrary to the terms thereof surely he would have protested or at least not participated in such acts.

We also consider that the testatrix undoubtedly desired that any sale of the land be with the unanimous consent of the three sisters and that such sale be in writing as the law requires. However, does the language show that the testatrix was concerned that there be unanimous execution of a written instrument where such was not necessarily required to effectuate a sale, as in the case of timber? See Code Ann. §§ 109A-2—107 (1) (UCC, Ga. L. 1962, pp. 156, 175; 1978, pp. 1081, 1136) and 109A-2—201 (UCC, Ga. L. 1962, pp. 156, 176). A blanket requirement for a writing could have been easily expressed by the following terminology inserted at the end of the provision: "provided that such action shall be unanimously agreed to by such life tenants and *provided*

*further that all of the life tenants shall execute a written instrument evidencing such action."* (Emphasis supplied to rewritten portion.)

After careful consideration of the language employed we find the will to be equally susceptible to either the construction urged by the plaintiff or that of the defendants. In the context here, it is ambiguous. A jury must determine the testatrix' intent. *Williams v. McCoy Lumber Industries, Inc.,* 146 Ga. App. 380 (3) (246 SE2d 410).

Since the will does not expressly require unanimous execution of a written instrument in order to sell timber, the trial judge erred in so finding and directing a verdict for the defendants.

*Judgment reversed. Smith and Birdsong, JJ., concur.*

ARGUED MARCH 12, 1979 — DECIDED MAY 8, 1979 — REHEARING DENIED JUNE 5, 1979 — 

*Tom B. Benham,* for appellant.
*Robert H. Herndon, James E. Peugh, Jones, Cook, Miller & Benton, Thomas C. James, III,* for appellees.