76992. DAVIS v. JONES et al.
(377 SE2d 163)

BANKE, Presiding Judge.

Evelyn Davis filed this wrongful death action against Carey and Clifford Jones after her son, Robert, died from gunshot wounds inflicted by Carey Jones. The case has been tried twice. The first trial resulted in a verdict in favor of Davis. However, in *Jones v. Davis*, 183 Ga. App. 401 (359 SE2d 187) (1987), this court held that the Joneses should have been granted a new trial based on an error in the jury charge. The retrial resulted in a verdict in favor of the Joneses, and the case is now before us on appeal from the denial of Davis's motion for new trial. *Held*:

1. The plaintiff contends that the trial court erred in refusing to allow her to introduce Clifford Jones's pre-trial deposition testimony as rebuttal evidence in lieu of calling him as a rebuttal witness. In the alternative, she contends that the court erred in cutting off her cross-examination of this witness without allowing her to introduce a selected portion of his deposition testimony for impeachment purposes.

In support of the first contention, the appellant relies on OCGA § 9-11-32 (a) (3), which provides, in pertinent part, that the "deposition of a witness, whether or not a party, may be used by any party for any purpose. . . ." See *Head v. H. J. Russell Constr. Co.*, 152 Ga. App. 864 (264 SE2d 313) (1980). However, pursuant to OCGA § 9-11-32 (a) (4), the use of a deposition given by a witness who is available to testify in person is subject to the discretion of the trial judge. See *Atlanta Coca-Cola Bottling Co. v. Rosser*, 250 Ga. 52, 54 (fn. 1) (295 SE2d 827) (1982). At the time the plaintiff sought to introduce the deposition, Clifford was already on the stand and was in the process of being cross-examined by the plaintiff's counsel as a rebuttal witness. Consequently, no necessity whatever was shown for supplying his testimony by deposition, and the trial court did not abuse its discretion in declining to allow the deposition to be used for this purpose.

The deposition testimony was, however, potentially relevant for impeachment purposes. The shooting had occurred at a store where Carey Jones worked as a cashier and where the decedent was present

as a customer. The plaintiff sought to prove that Carey Jones had shot her son in the *entranceway* of the store after becoming angry with him in a dispute over the amount of change he was entitled to receive from a beer purchase. The defendants, on the other hand, sought to establish that Carey had shot the decedent in self-defense as the latter was *climbing over the counter* to attack him. On rebuttal, in response to a question propounded by the plaintiff's counsel, Clifford Jones testified that Carey had told him that the decedent was "coming across the counter" when the fatal shots were fired. In his deposition, however, Clifford had testified that Carey told him the decedent was standing in the entranceway when the shots were fired. It appears that the trial court declined to allow this portion of the deposition to be used for impeachment purposes because a proper foundation had not been laid for it.

"[T]he procedure for laying the foundation for impeachment by prior inconsistent statements [is] as follows: '[T]he cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place, and the person to whom made. . . . If the witness denies the making of the statement, or fails to admit it, . . . then the requirement of "laying the foundation" is satisfied and the cross-examiner, at his next stage of giving evidence, may prove the making of the alleged statement.' McCormick on Evidence 72, § 37 (2d ed.) (1972)." *Carter v. State,* 244 Ga. 803, 806 (262 SE2d 109) (1979). While an examination of the transcript reveals that no such foundation was laid for the introduction of the deposition testimony in this case, it further reveals that the reason no such foundation was laid was because the trial court cut off the questioning of the witness prematurely and refused to allow it. As the evidence in question was not only material but central to the plaintiff's case, we must conclude that this constituted reversible error.

2. We reject the plaintiff's contention that the trial court gave an incorrect charge on self-defense, inasmuch as the court's charge tracked the language of the statute, OCGA § 16-3-21. See *McNeil v. Parker,* 169 Ga. App. 756 (315 SE2d 270) (1984).

3. The plaintiff contends that during closing argument opposing counsel violated an earlier court ruling by referring to the fact that Carey Jones had previously been acquitted of criminal charges in connection with the incident. However, an examination of the transcript reveals that no objection was made to the comment at trial. "When allegedly improper argument is made to the jury, opposing counsel *must* object at trial or otherwise invoke a ruling of the trial court. Failure to so object constitutes waiver." *Verde v. Granary Enterprises,* 178 Ga. App. 773, 774 (5) (345 SE2d 56) (1986). (Emphasis supplied.) Accordingly, this enumeration provides nothing for review.

*Judgment reversed. Birdsong, C. J., Deen, P. J., Carley, Pope,*

*and Benham, JJ., concur. McMurray, P. J., and Beasley, J., dissent. Sognier, J., dissents in judgment only.*

BEASLEY, Judge, dissenting.

I concur in Divisions 2 and 3 but respectfully dissent because the record does not contain a reversible error as found in Division 1.

Defendant Carey Jones gave his version of the event on direct examination: ". . . [McClellan] came in, he pulled some beer out of the cooler; I started to bag the beer, and I bagged it. He screamed, "I'll beat your ass." He started to come around the counter. I reached over, put my hand on the pistol and said, "Hold it," and he tried to come over the counter and I shot him. He fell back down on the floor and got up. He came around the counter and fell. I went around the counter, tried to turn him over." He also testified, "Well, when . . . he said that 'I'll use that gun on you,' " and "I felt like he'd try and do it." He stated that he was afraid all through his body.

In further recounting the events, he testified that soon after the incident, "I remember seeing my father. I tried to tell him what happened, . . ."

In rebuttal, plaintiff sought to show that Carey gave his father a different version of what happened than he testified to, calling for the purpose of cross-examination Clifford Jones. Clifford was asked: "Is it your understanding from Carey that Bobby [McClellan] was coming across the top of the counter when he was shot?" After objection was made and overruled, the witness answered: "That's what I understand."

In an effort to impeach Clifford's response, and to show that Carey told Clifford something else when he talked to him right after the incident, plaintiff turned to Clifford's deposition taken in August 1985 (this trial was September 1987). The witness identified it and acknowledged that it was sworn to and signed by him. Counsel then read aloud from the deposition, with Clifford following and later agreeing that he read correctly:

"Question, 'You have discussed this with Carey Jones, have you not?' Answer, 'Yes.' Question, 'I realize that you were not there, but could you tell me your understanding or belief as to what happened in connection with that shooting?' Answer, 'What I was told?' Question, 'Yes.' Answer, 'That the deceased came into the store on two occasions and made some threats and attempted to come around behind the counter with a threat of doing bodily harm.' [Question], 'And that this precipitated the shooting?' Answer, 'Yes.' "

Then the jury was excused and in its absence plaintiff proffered a further deposition portion which he contended impeached Clifford's trial testimony and rebutted Carey's:

" 'Where did Carey Jones tell you he was standing when the

shooting took place:' Answer, 'Right here.' Question, 'When you say here, you're pointing to the . . .' Answer, 'Entranceway.' " (A portion is skipped and counsel reads again.) "[Q]uestion, 'And he told you that Bobby McClellan was in the entranceway?' Answer, 'In the entranceway.' Question, 'Where the spot of blood shows?' Answer, 'Witness nods head affirmatively.' "

On appeal, appellant contends that he also proffered the following from Clifford's deposition, but it was not done:

"Q. What did he say that Bobby McClellan did prior to the shooting?

"A. He came from in front of the counter around to the entranceway.

"Q. And was shot there?

"A. Yes."

Although this was not proffered below, it is in the deposition as part of the record in the case. It demonstrates further that the deposition did not impeach Clifford's trial testimony nor rebut Carey's.

There is a hand-drawn diagram that was used throughout this litigation, including during the taking of the deposition and at trial. It was plaintiff's first exhibit. The diagram shows that there were two "entranceways" which were discussed, the entranceway to the store and the entranceway to the area behind the counter. There were also two "spots of blood," one just inside the door into the store, in front of the front part of the L-shaped counter and one in the entranceway to the area behind the counter. McClellan's body is shown lying in front of the side part of the counter, with his feet near the latter-located blood. There were also two coolers, the beer cooler immediately in front of and parallel to the front part of the counter and near the door entrance, and a wall cooler adjacent to the entranceway to the area behind the counter and against a wall.

Taking the diagram and the testimony and deposition together, appellant has failed to show that 1) the deposition impeaches Clifford's trial testimony or 2) the deposition rebuts Carey's trial testimony.

Plaintiff's counsel argued to the trial court that even if the deposition excerpts did not impeach Clifford so as to gain admissibility under OCGA § 9-11-32 (a) (1), it was admissible as substantive evidence in rebuttal of what Carey had testified to, under OCGA § 9-11-32 (a) (2). The argument was that since Clifford was a party to the lawsuit, his deposition could be used for any purpose, including rebuttal of a defense witness' testimony. The court refused to allow the reading of this additional portion of the deposition to the jury.

Plaintiff's counsel then said he would ask the witness directly about what Carey had told him, and if Clifford's testimony was different from what he had said in deposition, he would then use the depo-

sition to impeach Clifford.

Defendant Carey Jones' counsel objected that it was not rebuttal testimony, because defendants had introduced no evidence as to what Carey had told his father but only that Carey had talked about it with his father. The court sustained the objection, plaintiff made no proffer, and Clifford Jones withdrew from the witness stand. Since we do not know what Clifford would have said if cross-examined further, we cannot rule that exclusion was harmful. *Dubberly v. P. F. Moon & Co.*, 184 Ga. App. 221, 223 (2) (361 SE2d 223) (1987); *Lakeview Estates v. Hilltop &c. Inc.*, 153 Ga. App. 323, 325 (2) (265 SE2d 120) (1980); *Grant v. Bell*, 150 Ga. App. 141, 145 (2) (257 SE2d 12) (1979), rev'd on other grounds, *Bell v. Grant*, 244 Ga. 665 (261 SE2d 616) (1979).

Since appellant has failed to show that she was precluded by the judge's ruling from impeaching Clifford by his deposition or rebutting Carey by Clifford's further testimony or the deposition, there is no reversible error.

DECIDED NOVEMBER 16, 1988 —
REHEARING DENIED DECEMBER 8, 1988 — ▮

*George W. Fryhofer, Bondurant, Mixson & Elmore, George W. Fryhofer III*, for appellant.

*Gary A. Glover, Michael C. Garrett, Percy J. Blount*, for appellees.